IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Brandy Oldrey, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>- against -<br><br>Nestlé Waters North America, Inc.,<br>                Defendant | 7:21-cv-03885<br><br><br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1. Nestlé Waters North America, Inc. ("defendant") manufactures, markets and sells sparkling water purporting to contain a non-de minimis amount of raspberry and lime ingredients under its Poland Spring brand ("Product").

2. In the last five years, sparkling water sales have increased over 40 percent, with Americans consuming 170 million gallons each year.[1]

---

[1] Sheila Marikar, The Seltzer Bubble, New York Times, July 13, 2019.

3.   Defendant markets the Product to the many consumers who have cut back on sugary drinks like carbonated soft drinks (CSD) and fruit juices, due to growing awareness of sugar's adverse health effects, imploring them to "ditch the sugary sodas."[2]



TASTE THE *Real*

And ditch the sugary sodas.

Poland Spring sparkling.

Real RASPBERRY LIME flavor.

Real natural spring water.

Refreshing bubbles.

Enjoy the real taste.

4.   "Flavored water is more interesting than plain water but also allows consumers to avoid the added sugars and calories present in other carbonates and juices."

5.    Consumers are seeking sparkling waters with real fruit ingredients, which is why the front label prominently states the Product is made "With a Twist of Raspberry [and] Lime" and the side panel states, "Taste the Real."

---

[2] Rebekah Schouten, Why is sparkling water so big right now?, Food Business News, Mar. 10, 2021; Margaret Malochleb, Riding the Wave of Flavored Waters, IFT.org, Sept. 1, 2019; Barbara Harfmann, Bottled Water Bubbles Over with Growth, Beverage Industry, Oct. 8, 2019.

6. Sparkling waters with real fruit ingredients are available to consumers, from companies like Spindrift (left), and compete with defendant's Product.




7. The Product's representations include "With a Twist of Raspberry [and] Lime" and pictures of fresh raspberries and limes.



3

8. New York State regulations require companies to truthfully disclose whether a food or beverage contains the ingredients pictured on its label. *See* 1 NYCRR 259.1(a)(3) contained in Section 259.1 ("Packaging and labeling of food.") (incorporating 21 C.F.R. § 101.22, which controls labeling of flavor).

9. Defendant's labeling misleads consumers as to the relative amount and quantity of raspberry and lime ingredients.

10. Consumers expect the presence of a non-de minimis amount of raspberry and lime ingredients, based on the pictures of these fruits and promises the Product is made "With a Twist of Raspberry [and] Lime."

11. In the context of food and beverages, a "twist" means the addition of fruit ingredients in small amounts that otherwise might be unexpected.

12. Consumers' preference is for foods which get their taste from food ingredients instead of added flavor, because this is perceived as more natural, less processed and not exposed to additives or solvents that are used even in making "natural flavors."

13. "Food" refers to ingredients that are a source of nutritive value, such as raspberries or limes.

14. Raspberry and lime flavor are the extractives or essences from these fruits, which are concentrated, compounded and synthesized, which do not provide nutritive value. *See* 21 C.F.R. § 101.22(a)(3).

15. Based on the representations, consumers will expect the raspberry and lime taste is provided by "food" ingredients – raspberries and limes.

16. An appreciable amount of lime or raspberry is an amount sufficient so that all of the raspberry and lime flavor comes from raspberries and limes.

17. The side panel's statement, "Taste the Real" and "Real RASPBERRY LIME flavor" furthers the expectation that the Product will contain raspberry and lime ingredients in non-negligible amounts.

18. The front label attempts a "disclaimer" off to the lower right, which states, "NATURALLY FLAVORED SPRING WATER WITH OTHER NATURAL FLAVORS AND CO2."



19. Even if consumers examined this small print disclosure *after* seeing the other representations, they would not know this meant the Product did not contain a "Twist of Raspberry [and] Lime."

20. The phrase, "NATURALLY FLAVORED WITH OTHER NATURAL FLAVORS" is used so extensively by food and beverage companies it has become the equivalent of a labeling tic, affixed to a majority of products with added "natural" flavors.[3]

---

[3] 21 C.F.R. § 101.22(i)(1)(iii).

21. "Naturally Flavored With Other Natural Flavors" is careful language, is an implicit admission that the Product does not contain a "Twist of Raspberry [and] Lime," and instead has a de minimis amount of raspberry and lime ingredients.

22. In fact, most of the Product's flavoring is from non-raspberry and non-lime flavors.

23. The ingredient list fails to clarify the other representations because it lists "NATURAL FLAVORS."



**INGREDIENTS:** SPRING WATER, $CO_2$, NATURAL FLAVORS.

24. "Natural Flavors" is the term used where a mix of extractives and essences from various fruits, along with additives and solvents, are combined in a laboratory.

25. "Natural Flavors" fails to tell consumers that the Product's taste is mainly from fruits other than raspberries and limes and has a negligible amount of these fruit ingredients.

26. This was or would be confirmed by lab testing which observed an absence of the spectrum of flavor compounds associated with raspberries and limes.

27. Because raspberry oil or raspberry extract and lime juice are not separately identified ingredients, it means that any real raspberry and lime is necessarily present as a flavoring, and is a *de minimis* or a trace amount of the "Natural Flavors."

28. According to flavor expert Bob Holmes, if a product provided "all the flavor depth" of the named fruit ingredients, i.e., raspberry or lime, the label would clearly state, "raspberry oil, lime juice" instead of "Natural Flavors."

29. The Product's "Natural Flavors" instead consists of flavor compounds which imitate the taste provided by raspberries and limes.

30. These compounds are cheaper than using real raspberries and limes, and more concentrated, so less of these ingredients need to be used.

31. Raspberry oil or raspberry extract gets its flavor from at least 30 compounds including alcohols, acids, esters, carbonyls, ketones and other hydrocarbons, like naphthalene.

32. These include (Z)-hexenol, hexanal, (E)-2-hexenal, 2-heptanone, δ-octalactone, δ-decalactone, geraniol, α-ionone, β-ionone, terpinen-4-ol, ethyl formate and 1-(p-hydroxyphenyl)-3-butanone.

33. 1-(p-hydroxyphenyl)-3-butanone, known as "raspberry ketone," is the most prominent compound and is most characteristic of raspberry.

34. The characteristic raspberry taste is described as "green, acid and sweet natural profile…[with] slightly crunchy floral undertones blended with woody notes [taste] at the end."

35. Limes gets their flavor from alcohols, aldehydes, esters, ethers, terpenes, hydrocarbons and ketones.

36. These compounds give limes their characteristic sour or bitter taste, which is complemented by tartness.

7

37. However, the "lime" taste is mainly from added limonene and citral, through the isomers neral and geranial, and it lacks the other compounds essential to a lime's taste.

38. These compounds provide the woody and "piney" notes of real limes.

39. Lab analysis reveals or would reveal a relative abundance of raspberry ketone, limonene and citral, compared to the other key odor-active compounds in raspberries and limes, which indicates a *de minimis* amount of these fruit ingredients.

40. The Product lacks an authentic raspberry and lime taste because though it may contain raspberry ketones, limone and citral, it lacks a sufficient amount, if any, of the complementary flavor compounds in these fruits.

41. The absence of these compounds indicates the use of less real raspberries and limes than consumers will expect.

42. Consumers also value raspberries and limes for their nutritive purposes, which is one of the reasons plaintiff purchased the Product.

43. Limes are high in vitamin C, a primary antioxidant which protects cells from damaging free radicals.

44. The polyphenol antioxidants in limes are linked with reducing hypertension.

45. Raspberries also contain vitamin C, but provide potassium, essential to heart function and controlling blood pressure.

46. Raspberries contain omega-3 fatty acids, known to reduce the incidence of stroke.

47. Raspberries contain the essential mineral manganese, which promotes healthy bones and skin and regulation of blood sugar.

48. Reasonable consumers must and do rely on defendant to honestly describe the components and features of the Product, relative to itself and other comparable products.

49. Even if Plaintiff scrutinized all elements of the labeling, it would not cure the misrepresentations.

50. Reasonable consumers must and do rely on defendant to honestly describe the components and features of the Product.

51. Defendant misrepresented the Product through affirmative statements, half-truths, and omissions.

52. Defendant sold more of the Product and at a higher prices than it would have in absence of this misconduct, resulting in additional profits at the expense of consumers.

53. Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

54. Plaintiff paid more for the Product based on the representations than she would have otherwise paid.

55. As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than no less than $2.19 for 16.9 OZ, excluding tax, higher than similar products, such as Spindrift Lime Seltzer, which, when compared on a per ounce basis, costs $1.99 for 16.9 OZ, and other similar products represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

### Jurisdiction and Venue

56. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

57. Plaintiff Brandy Oldrey is a citizen of New York.

58. Defendant Nestlé Waters North America, Inc. is a Delaware corporation with a principal place of business in Stamford, Stamford County, Connecticut.

59. Diversity exists because plaintiff Brandy Oldrey and defendant are citizens of different states.

60. Upon information and belief, sales of the Product and any available statutory and other monetary damages, exceed $5 million during the applicable statutes of limitations, exclusive of interest and costs.

61. Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred here – the purchase of plaintiff and her experiences identified here.

## Parties

62. Plaintiff Brandy Oldrey is a citizen of Hyde Park, Dutchess County, New York.

63. Defendant Nestlé Waters North America, Inc. is a Delaware corporation with a principal place of business in Stamford, Connecticut, Stamford County.

64. Defendant is a multinational bottler of water products.

65. Defendant's Sparkling Poland Spring [Water] With a Twist of Raspberry [and] Lime is sold in various sizes, such as 12 OZ cans and 16.9 OZ bottles, and cases of cans and bottles.

66. The Product is sold at tens of thousands of retail locations – grocery stores, drug stores, big box stores, convenience stores, etc. – and online.

67. Plaintiff purchased the Product on at least one occasion within the statutes of limitations for each cause of action, including in April 2021, at stores including ShopRite of Walkill, 20 Lloyds Ln, Middletown, NY 10940.

68. Plaintiff bought the Product because she expected it would provide the non-negligible amounts of the named fruit ingredients, not just for flavor but for their nutritive value.

69. The Product was worth less than what Plaintiff and consumers paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

70. Plaintiff paid more for the Product than she would have paid otherwise.

71. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's representations about its components and ingredients are consistent with its representations.

## Class Allegations

72. The class will consist of all purchasers of the Product who reside in New York during the applicable statutes of limitations.

73. Plaintiff seeks class-wide injunctive relief based on Rule 23(b) in addition to a monetary relief class.

74. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

75. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

76. Plaintiff is an adequate representative because her interests do not conflict with other members.

77. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

78. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

79. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

80. Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>New York General Business Law ("GBL") §§ 349 & 350</u>

<u>(Consumer Protection Statute)</u>

81. Plaintiff incorporates by reference all preceding paragraphs.

82. Plaintiff and class members desired to purchase a product which contained a non-negligible amount of the identified fruit ingredients.

83. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

84. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

85. Plaintiff relied on the representations.

86. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty,
Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*</u>

87. The Product was manufactured, labeled and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it contained a non-negligible amount of the identified fruit ingredients.

88. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

89. This duty is based on Defendant's outsized role in the market for this type of Product – a global international conglomerate with a history of selling sparkling waters.

90. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

91.    Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices over the past several years.

92.    The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because they were not fit to pass in the trade as advertised.

93.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Negligent Misrepresentation

94.    Defendant had a duty to truthfully represent the Product, which it breached.

95.    This duty is based on defendant's position, holding itself out as having special knowledge and experience this area.

96.    The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant.

97.    Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchases of the Product.

98.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Fraud

99.    Defendant misrepresented and/or omitted the attributes and qualities of the Product.

100.   Defendant's fraudulent intent is evinced by its knowledge of the relevant regulations, as its misleading claims are carefully worded to avoid the obvious prohibited statements but still misleading.

Unjust Enrichment

101. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   May 2, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080

Fax: (516) 234-7800
spencer@spencersheehan.com