UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRANDY OLDREY, individually and on behalf of all others similarly situated,

                      Plaintiff,

        v.

NESTLÉ WATERS NORTH AMERICA, INC.,

                      Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __7/27/2022__

21 CV 03885 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

      Plaintiff Brandy Oldrey ("Plaintiff") brings this putative class action against Nestlé Waters North America, Inc.[1] ("Defendant"), alleging violation of New York's General Business Law §§ 349 and 350, breach of express warranty, breach of the implied warranty of merchantability, violation of the Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, negligent misrepresentation, fraud, and unjust enrichment. (ECF No. 1.) Presently before the Court is Defendant's motion to dismiss the Complaint. (ECF No. 16.) For the following reasons, the motion is GRANTED.

## BACKGROUND

      The following facts are taken from Plaintiff's Complaint (ECF No. 1) and are accepted as true and construed in the light most favorable to Plaintiff for purposes of this motion.

      Defendant is a multinational bottler of water products, and it manufactures, markets, and sells a raspberry and lime-flavored sparkling water under its Poland Springs brand (the "Product"). (Compl. ¶¶ 1; 64.) Defendant markets the Product as a way to "ditch the sugary sodas." (*Id.* ¶ 3.)

---

[1] Nestlé Waters North America, Inc. is now known as BlueTriton Brands, Inc.

1

The Product has a label that states, "With a Twist of Raspberry Lime" and "Taste the Real" with pictures of raspberries and limes. (*Id*. ¶¶ 5; 7.)




Consumers seek sparkling waters with real fruit ingredients, and value raspberries and limes for their nutritive purposes. (*Id*. ¶¶ 5; 42.) However, most of the Product's flavoring is from non-raspberry and non-lime flavors. (*Id*. ¶ 22.) The ingredient list only includes "spring water, CO2, natural flavors." (*Id*. ¶ 23.) "Natural Flavors" is the term used where "a mix of extractives and essences from various fruits, along with additives and solvents, are combined in a laboratory." (*Id*. ¶ 24.) This fails to inform consumers that the Product's taste is mainly from fruits other than raspberries and limes. (*Id*. ¶ 25.) If the Product provided "all the flavor depth" of the named fruit ingredients, the label would state "raspberry oil, lime juice" instead of "Natural Flavors." (*Id*. ¶ 28.)

2

Plaintiff alleges that Defendant's labeling misleads consumers as to the relative amount and quantity of raspberry and lime ingredients. (*Id.* ¶ 9.) Consumers expect the presence of a non-*de minimis* amount of raspberry and lime ingredients based on the labeling, and consumers prefer foods which get their taste from food ingredients instead of added flavor as this is perceived as more natural, less processed and not exposed to additives or solvents. (*Id.* ¶¶ 10; 12.) The Product lacks "an authentic raspberry and lime taste" because it lacks sufficient amounts of the flavor compounds of these fruits. (*Id.* ¶ 40.)

The front label also includes a "disclaimer" which states "NATURALLY FLAVORED SPRING WATER WITH OTHER NATURAL FLAVORS AND CO2." (*Id.* ¶ 18.)



Plaintiff alleges that even if consumers examined this disclaimer after seeing the other representations, they would not know this meant the Product does not contain a "Twist of Raspberry Lime." (*Id.* ¶ 19.)

Plaintiff purchased the Product on at least one occasion. (*Id.* ¶ 67.) She bought the Product because she expected it would provide the non-negligible amounts of the named fruit ingredients. (*Id.* ¶ 68.) As a result of the representations, Defendant sold more of the Product and at higher prices, and Plaintiff bought the product and paid more than she would have absent the representations. (*Id.* ¶¶ 52-55; 69-70.)

Plaintiff initiated this action on May 2, 2021. (ECF No. 1.) On January 11, 2022, Defendant filed a motion to dismiss (ECF No. 16), and Plaintiff filed a brief in opposition (ECF No. 19.) Defendant also filed a notice of supplemental authority on April 7, 2022. (ECF No. 23.)

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679.

While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 662, 678 (quoting *Twombly*, 550 U.S. at 555). The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## DISCUSSION

Plaintiff asserts claims against Defendant for (1) violations of §§ 349 and 350 of the New York General Business Law ("GBL"), (2) negligent misrepresentation, (3) breach of express warranty, (4) breach of implied warranty of merchantability, (5) violation of the Magnuson Moss

Warranty Act ("MMWA"), 15 U.S.C. §§ 2301, *et seq.*, (6) fraud, and (7) unjust enrichment. (Compl. ¶¶ 81-101.) The Court will examine each claim in turn.

### I. New York General Business Law Sections 349 and 350

Section 349 of the GBL involves unlawful deceptive acts and practices, while section 350 involves unlawful false advertising. "The standard for recovery under [Section] 350, while specific to false advertising, is otherwise identical to Section 349." *Denenberg v. Rosen*, 897 N.Y.S.2d 391, 396 (2010) (quoting *Goshen v. Mutual Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1 (2002)). The elements of a cause of action under both Sections 349 and 350 are that: "(1) the challenged transaction was 'consumer-oriented'; (2) defendant engaged in deceptive or materially misleading acts or practices; and (3) plaintiff was injured by reason of defendant's deceptive or misleading conduct." *Id.* (citing *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (1995)).

The parties' main dispute in the instant motion involves the second element: whether Defendant engaged in deceptive or materially misleading acts or practices. To be actionable, the alleged deceptive act must be "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego*, 85 N.Y.2d at 26; *see also Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) ("As for the 'materially misleading' prong, '[t]he New York Court of Appeals has adopted an objective definition of misleading, under which the alleged act must be likely to mislead a reasonable consumer acting reasonably under the circumstances.'"). In determining whether a reasonable consumer would be misled, "[c]ourts view each allegedly misleading statement in light of its context on the product label or advertisement as a whole." *Pichardo v. Only What You Need, Inc.*, No. 20-cv-493 (VEC), 2020 WL 6323775, at *2 (S.D.N.Y. Oct. 27, 2020) (citing *Wurtzburger v. Kentucky Fried Chicken*, No. 16-cv-08186, 2017 WL 6416296, at *3 (S.D.N.Y. Dec. 13, 2017)); *see also Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013)

("[I]n determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial."). "It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink*, 714 F.3d at 741 (citing *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995); *Oswego*, 85 N.Y.2d at 26).

    A.    *The Phrase "With a Twist of Raspberry Lime" is Not Misleading*

Plaintiff first claims that the phrase "With a Twist of Raspberry Lime" viewed together with the pictures of raspberries and limes on the Product's front label is misleading because it implies that the Product contains a non-*de minimis* amount of raspberry and lime ingredients, when in fact, it contains only a trace amount of the same. (Compl. ¶ 10; 27.) Defendant avers that "the law is clear that even where a product contains no fruit ingredients at all, use of names and depictions of fruit to indicate flavor is not misleading to a reasonable consumer." (BlueTriton Brands Inc.'s Memorandum of Law in Support of Defendant's Motion to Dismiss ("Mem.") ECF No. 17 at 10.)

"[C]ourts in this Circuit have sustained claims where the language of a product label, in context, referred not only to a flavor but *also indicated the presence of an ingredient*." *Budhani v. Monster Energy Co.*, 527 F. Supp. 3d 667, 678 (S.D.N.Y. 2021) (emphasis added). This is evident in how courts have treated the word "vanilla" in food labels. *Numerous* courts (including this Court) have dismissed challenges involving the use of the word "vanilla" on food labels because there is nothing in the word "vanilla" itself that would lead a reasonable consumer to understand a product's *flavor* to be derived mostly or exclusively from the vanilla bean. *See, e.g., Myers v. Wakefern Food Corp.*, No. 20 CIV. 8470 (NSR), 20-CV-2402 (PGG) (JLC), 2022 WL 603000, at *4 (S.D.N.Y. Mar. 1, 2022) (concluding that the Product's "vanilla" label would

6

not lead a reasonable consumer to understand its flavor to be derived mostly or exclusively from the vanilla bean."); *Garadi v. Mars Wrigley Confectionery US, LLC*, No. 1:19-cv-03209 (RJD)(ST), 2021 WL 2843137, at *3 (E.D.N.Y. July 6, 2021) (explaining the phrase "vanilla ice cream" does not "make any claims about where or in what quantity the vanilla taste comes from. It simply alerts a consumer faced with different flavors that this ice cream tastes like vanilla"); *Robie v. Trader Joe's Co.*, No. 20-cv-07355-JSW, 2021 WL 2548960, at *6 (N.D. Cal. June 14, 2021) (finding that the phrase "Vanilla Flavored" does not suggest to the reasonable consumer that the flavor comes exclusively from the vanilla bean); *Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562, 581 (S.D.N.Y. 2021) (concluding that the word "vanilla" on the front of the package "appears to describe a flavor more than an ingredient" where there was "no reference to 'vanilla bean' or 'vanilla extract' anywhere on the packaging; nor [was] there any reference to the product being 'made with' or 'made from' any part of the vanilla plant"); *Parham, v. ALDI, Inc.*, No. 1:19-cv-08975 (PGG) (SDA), 2021 WL 709632, at *3 (S.D.N.Y. Feb. 15, 2021) ("A reasonable consumer would understand that the word 'vanilla' on the front of the carton describes how the Product tastes, not what it contains, especially in circumstances where the ingredients listed . . . do not mention vanilla at all.").

Here, when assessing the Product's packaging as a whole, the label's use of the phrase "With a Twist of Raspberry Lime" merely represents that the Product is raspberry and lime flavored. *See Cruz v. D.F. Stauffer Biscuit Co.*, No. 20-CV-2402 (PGG) (JLC), 2021 U.S. Dist. LEXIS 213641, at *16 (S.D.N.Y. Nov. 4, 2021) (dismissing GBL claim where "nothing on the Product label states or implies that the cookies' flavor is derived entirely or predominantly from real lemons or from natural, non-artificial ingredients"). Indeed, the Product's label does not use language such as "made with raspberries and limes," or any other similar message that would

7

convey to a reasonable consumer that the Product includes those particular ingredients. *Cf. Atik v. Welch Foods, Inc.*, No. 15-CV-5405 (MKB) (VMS), 2016 WL 5678474, at *10; 13 (E.D.N.Y. Sept. 30, 2016) (holding the court could not conclude that the product's labeling, which depicted pictures of actual fruits and stated the fruit snacks were "made with real fruit", would not mislead a reasonable consumer). Further, any "confusion" that is created by the Product's labeling may be "sufficiently dispelled by the ingredients on the back of the package." *Cruz,* 2021 U.S. Dist. LEXIS 213641, at *17 (quoting *Wallace v. Wise Foods, Inc.*, No. 20-CV-6831 (JPO), 2021 WL 3163599, at *2 (S.D.N.Y. July 26, 2021)). The label clearly states, "NATURALLY FLAVORED SPRING WATER WITH OTHER NATURAL FLAVORS", and the ingredients include "spring water, CO2, and natural flavors." (Compl. ¶¶ 18; 23.) As the Complaint states, "[b]ecause raspberry oil or raspberry extract and lime juice are not separately identified ingredients, it means that any real raspberry and lime is necessarily present as a flavoring." (*Id*. ¶ 27.) Therefore, the Court concludes that a reasonable consumer would associate the phrase "With a Twist of Raspberry Lime" in the Product's front label with its flavor and not as particular ingredients, much less the predominant ones.

Plaintiff responds that Defendant's position is contrary to the Second Circuit's opinion in *Mantikas v. Kellogg Co.*, 910 F.3d 633 (2d Cir. 2018). (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Complaint ("Opp.") ECF No. 19 at 3-4.) *Mantikas* concerned the packaging of Cheez-Its crackers, the boxes of which were conspicuously labeled "WHOLE GRAIN" and "MADE WITH WHOLE GRAIN." *Id*. at 634. But in that case, the grain content was indisputably comprised of predominantly enriched white flour and a smaller amount of whole grain flour. *Id*. at 634. The product's packaging disclosed the number of grams of whole grain per serving (5 or 8 grams per serving size) and the Nutrition Facts panel accurately

8

listed the crackers' actual composition: a serving size was 29 total grams and the first ingredient listed was "enriched white flour." *Id*. at 634–35.  Despite these disclosures, the Second Circuit held that the plaintiffs had stated a plausible claim because the crackers' labeling "falsely impl[ied] that the grain content is entirely or at least predominantly whole grain, whereas in fact, the grain component consisting of enriched white flour substantially exceeds the whole grain portion." *Id.* at 637.  Therefore, even the technically accurate Nutrition Facts panel did not "render [p]laintiffs' allegations of deception implausible." *Id.*  Rather, the Court concluded that "a reasonable consumer should not be expected to consult the Nutrition Facts panel on the side of the box to correct misleading information set forth in large bold type on the front of the box." *Id.*  Therefore, Plaintiff avers that "Defendant may not mislead reasonable consumers into believing the Product contains raspberry and lime ingredients in one place, while 'disclaiming' their presence through esoteric language in other places."  (Opp. at 4.)

However, the key distinction here is that the Court has found the "With a Twist" language to be consistent with the full Product label.  While the Nutrition Facts panel and ingredients list on the whole grain Cheez-Its box contradicted rather than confirmed the "whole grain" representations, here the Product's full label and ingredients list confirm that the Product is merely raspberry and lime flavored.  *See Cruz,* 2021 U.S. Dist. LEXIS 213641, at *17–18 ("[T]he Product's front label does not state that it is free of artificial flavors, suggest that real lemons are the only source of the cookies' lemon flavoring, or claim that the flavor from real lemons constitutes a certain percentage of the total lemon flavor.  Therefore, the ingredient label's statement that the Product contains 'natural and artificial flavors' is consistent with Stauffer's representations on the front of its packaging and serves as clarifying language about the source of the Product's lemon flavor.").

As the court in *Boswell v. Bimbo Bakeries USA, Inc.*, held, cases involving food and drink packaging that is alleged to be false or misleading with respect to the product's actual ingredients "yield a standard that distinguishes between two categories of packaging: first, packaging with a prominent label that is unambiguous and misleading; and second, packaging with a prominent label that is ambiguous, but the ambiguity is resolved by reference to the list of ingredients or a Nutrition Facts panel." 570 F.Supp.3d 89, 94 (S.D.N.Y. 2021). As the packaging in *Mantikas* was found to be unambiguous and misleading, any disclosures in small print would not cure the deception. *Id*. at 94–95. In contrast, here, the "With a Twist" phrase is ambiguous, as reasonable consumers could differ on what this phrase means. Therefore, the Product's labeling should be viewed as a whole.

      B.      *The Phrase "Taste the Real" is Not Misleading*

Plaintiff next alleges that the Product's side panel which states, "Taste the Real" and "Real Raspberry Lime flavor" "furthers the expectation that the Product will contain raspberry and lime ingredients in non-negligible amounts." (Compl. ¶ 17.) Defendant avers that a reasonable consumer reading the label as a whole would not believe "Taste the Real" referred to real fruit ingredients. (Mem. at 13.) The Court agrees. Directly underneath "Taste the Real", the label states "Real Raspberry Lime flavor. Real natural spring water. Refreshing bubbles. Enjoy the real taste." Reading the label as a whole, it is clear that "Taste the Real" is referring to the flavor of the natural spring water. *See Brown v. Kerry Inc.*, No. 20-CV-9730 (PGG) (JLC), 2021 WL 5446007, at *5 (S.D.N.Y. Nov. 22, 2021) ("[T]he context of the label as a whole suggests that 'Slightly Sweet' is a representation of the Product's taste, rather than a representation that it is 'low sugar.'").

Accordingly, the Court concludes that Plaintiff has failed to sufficiently allege that the Product's label is misleading for purposes of her claims under GBL §§ 349 and 350.  Because the Court concludes that Plaintiff has not plausibly alleged that the Product's label is misleading to a reasonable consumer, it will dismiss Plaintiff's claims under GBL §§ 349 and 350 of the GBL.  It is therefore not necessary to reach Defendant's argument that these claims are preempted by federal law.  *See Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 806 (S.D.N.Y 2021).

## II.     Negligent Misrepresentation

Under New York law, a claim for negligent misrepresentation requires the plaintiff to plausibly allege "(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information."  *Marc J. Bern & Partners LLP v. U.S. Legal Support, Inc.*, No. 17 Civ. 6771 (ER), 2018 WL 2943784, at *6 (S.D.N.Y. June 11, 2018) (citing *J.A.O. Acquisition Corp. v. Stavitsky*, 8 N.Y.3d 144, 148 (2007)).  "A special relationship may be established by 'persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that  reliance  on  the  negligent misrepresentation is justified.'" *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 180 (2011) (quoting *Kimmell v. Schaefer*, 89 N.Y.2d 257, 263 (1996)).

"[G]enerally, a special relationship does not arise out of an ordinary arm's length business transaction between two parties." *Marc J. Bern*, 2018 WL 2943784, at *6 (quoting *MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 87 A.D.3d 287, 296–97 (2011)).  Instead, "[i]n the commercial context, a closer degree of trust between the parties than that of the ordinary buyer and seller is required to establish the 'existence of . . . a special relationship . . . [capable of] giv[ing] rise to an exceptional duty regarding commercial speech and justifiable reliance on such

speech.'" *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-cv-04697 (CM), 2016 WL 6459832, at *8 (S.D.N.Y. Oct. 26, 2016) (quoting *Kimmell*, 89 N.Y.2d at 264) (alterations in original). *Kimmell* directs courts to examine the following factors to determine whether a special relationship, and a duty to provide correct information, exists: (1) "whether the person making the representation held or appeared to hold unique or special expertise"; (2) "whether a special relationship of trust or confidence existed between the parties"; and (3) "whether the speaker was aware of the use to which the information would be put and supplied it for that purpose." *Id.* (quoting *Kimmell*, 89 N.Y.2d at 264).

Here, Defendant argues that Plaintiff does not plausibly allege the existence of a special relationship. (Mem. at 22.) Plaintiff responds that Defendant "h[eld] itself out as having special knowledge and experience [in] this area." (Opp. at 18.) Applying the *Kimmell* factors, the relationship between Defendant, as the manufacturer and seller, and Plaintiff as the buyer, does not rise to the level of the kind of special relationship—approaching that of privity—that would impose a duty to speak on Defendant. "[N]ot all representations made by a seller of goods . . . will give rise to a duty to speak with care." *Dallas Aero., Inc. v. CIS Air Corp.*, 352 F.3d 775, 788 (2d Cir. 2003) (quoting *Kimmell*, 89 N.Y.2d at 263). "Instead, the law of negligent misrepresentation requires a closer degree of trust between the parties than that of the ordinary buyer and seller in order to find reliance on such statements justified." *Id.* (citing *Kimmell*, 89 N.Y.2d at 263).

The Complaint's allegations here only describe a relationship between Plaintiff and Defendant which is that of an ordinary buyer and seller—which does not give rise to the kind of special relationship necessary to maintain a claim for negligent misrepresentation. *See, e.g.*, *Izquierdo*, 2016 WL 6459832, at *9 (dismissing negligent misrepresentation claim based on allegedly misleading candy packaging because "[n]othing in the complaint suggests that the

12

transaction differs in any way from the numerous cases in this District and Circuit in which courts have held that a basic commercial transaction does not give rise to a special relationship."); *Segedie v. Hain Celestial Grp., Inc.*, No. 14-cv-5029 (NSR), 2015 WL 2168374, at *14 (S.D.N.Y. May 7, 2015) (dismissing negligent misrepresentation claim alleging defendant's products were misleadingly labeled as "organic," "natural," or "all natural" for "failure to plead any cognizable special relationship" with the defendant, reasoning that "[d]efendant's obligation to label products truthfully does not arise from any special relationship. There is nothing approximating privity between the parties.").

Accordingly, Plaintiff's negligent misrepresentation claim fails.

### III. Breach of Express Warranty

To state a claim for an express breach of warranty under New York law, plaintiffs must plead "(1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach." *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014). However, "[i]n order to assert a breach of express warranty claim under New York law, 'a buyer must provide the seller with timely notice of the alleged breach of warranty.'"[2] *Lugones*, 440 F. Supp. 3d at 244 (quoting *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013)); *see also* N.Y. U.C.C. § 2-607(3)(a) ("the buyer

---

[2] "Although a minority of New York State cases suggest an exception to the notice requirement in retail sales, the court declines to impose this exception in the instant action, particularly given that the exception appears to be exclusively applied where a party alleges physical, in addition to economic, injury." *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143–44 (E.D.N.Y. 2018); *see also Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 245 (S.D.N.Y. 2020) (following *Colella* and finding the exception "inapplicable where, as here, Plaintiffs have not alleged any physical or personal injury as a result of Defendant's alleged breach"). Here, too, Plaintiff has not alleged any physical or personal injury, so the exception is inapplicable.

13

must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy").

Here, Defendant avers that Plaintiff has failed to give timely pre-suit notice of the alleged breach as required by New York law. (Mem. at 17.) The Court agrees and concludes that Plaintiff's express warranty claim fails for lack of timely notice. Plaintiff alleges only that she "provided or will provide notice to defendant, its agents, representatives, retailers and their employees." (Compl. ¶ 90.) "That allegation is insufficient to show that the buyer provided timely notice of the alleged breach—the statement is wholly equivocal." *Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d 370, 391 (S.D.N.Y. 2021). It does not allege that notice has been provided, only that Plaintiff "provided or will provide" notice.[3] "If Plaintiff had provided notice, she could have written that, rather than pleading, in essence, both that she did provide notice, and that she did not do so but will do so in the future. Plaintiff has not adequately pleaded that she in fact provided notice." *Id.*

Accordingly, the Court dismisses Plaintiff's claim for breach of express warranty. *See Lugones*, 440 F. Supp. 3d at 245 (finding that "Plaintiffs must allege some form of timely, pre-litigation notice" and dismissing breach of express warranty claim for failure to provide timely notice); *Colella*, 348 F. Supp. 3d at 143–44 (dismissing express warranty claim where the complaining "ma[de] no allegations and state[d] no facts showing that notice was provided to defendant"); *Quinn*, 958 F. Supp. 2d at 544 (dismissing breach of warranty claim for failure to allege timely notice).

### IV. Breach of Implied Warranty of Merchantability

---

[3] Plaintiff also alleges that "Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main office over the past several years." (Compl. ¶ 91.) This allegation does not suggest that the buyer provided timely notice, as required.

On the same basis on which the Court dismissed Plaintiff's claim for breach of express warranty, the Court similarly dismisses her claim for breach of the implied warranty of merchantability. "The U.C.C.'s notice requirement also applies to claims for breach of implied warranty." *Campbell*, 516 F. Supp. 3d at 392; *see also Int'l Bhd. of Teamsters Local 456 Health & Welfare Tr. Fund v. Quest Diagnostics Inc.*, No. 10-cv-1692 (RJD), 2012 WL 13202126, at *23 (E.D.N.Y. Apr. 19, 2012) (dismissing express and implied warranty claims for failure to plead that defendants were given timely notification of breach); *Hubbard v. Gen. Motors Corp.*, No. 95-cv-4362, 1996 WL 274018, at *4 (S.D.N.Y. May 22, 1996) (dismissing express and implied warranty claims under Section 2-607(3) of the U.C.C. because the complaint "lacks any allegation that plaintiff notified [the defendant]").

## V. Magnuson Moss Warranty Act

"To state a claim under the MMWA, plaintiffs must adequately plead a cause of action for breach of written or implied warranty under state law." *Garcia v. Chrysler Grp. LLC*, 127 F. Supp. 3d 212, 232 (S.D.N.Y. 2015). Hence, as her state law claims for express and implied warranty fail, Plaintiff's MMWA claim similarly fails for the same reasons.

## VI. Fraud

To state a claim of fraud under New York law, Plaintiff must allege "(1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to the plaintiff." *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997). A claim of fraud must be alleged with the particularity required by Federal Rule of Civil Procedure 9(b), which "requires that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Fin. Guar. Ins. Co.*

15

*v. Putnam Advisory Co., LLC*, 783 F.3d 395, 402–03 (2d Cir. 2015). Rule 9(b) permits a plaintiff to allege scienter generally, but the Second Circuit has "repeatedly required plaintiffs to plead the factual basis which gives rise to a strong inference of fraudulent intent." *United States ex rel. Tessler v. City of N.Y.*, 712 F. App'x 27, 29 (2d Cir. 2017) (summary order) (quoting *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991)).

As discussed above, the Court concludes that Plaintiff has failed to allege a material misrepresentation of fact or omission because a reasonable consumer would not conclude that the Product's label communicates that the Product's flavor derives predominantly from raspberries and limes. Furthermore, Plaintiff fails to plead facts that show Defendant acted with fraudulent intent. The Complaint merely contains conclusory statements that Defendant's intent "is evinced by its knowledge of the relevant regulations, as its misleading claims are carefully worded to avoid the obvious prohibited statements but still misleading." (Compl. ¶ 100.) This is insufficient. *See Barreto*, 518 F. Supp. 3d at 808 (dismissing fraud claim for the same reasons); *Santiful v. Wegmans Food Markets, Inc.*, No. 20-CV-2933 (NSR), 2022 WL 268955, at *7 (S.D.N.Y. Jan. 28, 2022) (same). Therefore, Plaintiff's fraud claim fails.

**VII.    Unjust Enrichment**

Under New York law, an unjust enrichment claim requires "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d. Cir. 2000) (internal quotation marks omitted). Plaintiff has failed to allege that any gains to Defendant would be unjust because she has not plausibly alleged that a reasonable consumer would be misled or deceived by the Product's label. *See, e.g.*, *McVetty v. TomTom N. Am., Inc.*, No. 19 CV 4908 (NSR), 2021 WL 965239, at *8 (S.D.N.Y. Mar. 13, 2021) (holding "McVetty [] failed to allege that any gains would be unjust

where McVetty [did] not plausibly allege[] that a reasonable customer would be misled or deceived by TomTom's use of the term 'lifetime'"). Thus, Plaintiff's unjust enrichment claim fails.

## VIII. Injunctive Relief

Finally, Plaintiff seeks injunctive relief for Defendant "to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws." (Compl. ¶ 3.) Because the underlying claims on which her requested injunctive relief depends fail, the Court denies Plaintiff's request for injunctive relief.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 16 and this action, to enter judgment accordingly, and to close the case.

Dated: July 27, 2022  
White Plains, New York

SO ORDERED:

_____  
NELSON S. ROMÁN  
United States District Judge